**KOLLER LAW LLC**
David M. Koller, Esquire (Pa 90119)
Jordan D. Santo, Esquire (Pa 320573)    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY DIMUCCIO,** | : | |
| **5056 Milano Street** | : | **Civil Action No. 25-6027** |
| **Ave Maria, FL 34142** | : | |
| Plaintiff, | : | |
| v. | : | **COMPLAINT AND** |
| | : | **JURY DEMAND** |
| **CVS PHARMACY, INC.,** | : | |
| **272 E Butler Avenue** | : | |
| **Ambler, PA 19002** | : | |
| | : | |
| **1 CVS Drive** | : | |
| **Woonsocket, RI 02895** | : | |
| Defendant. | : | |

**CIVIL ACTION**

Plaintiff, Jeffrey DiMuccio (hereinafter "Plaintiff"), by and through his attorney, brings this civil matter against Defendant, CVS Pharmacy, Inc. (hereinafter, "Defendant"), alleging he was subject to unlawful violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), and the Family and Medical Leave Act ("FMLA"), averring and alleging as follows:

**THE PARTIES**

1. Plaintiff is an adult individual domiciled in the above captioned address.

1

2. Defendant is an American retail corporation with a location at 272 E Butler Avenue, Ambler, PA 19002 and corporate headquarters located at 1 CVS Drive, Woonsocket, RI 02895.

3. At all relevant times hereto, Defendant employed the requisite number of employees under the applicable statutes and was a covered entity.

4. At all times hereto, Defendant employed managers, supervisors, agents and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decision, these individuals engaged in the practice of treatment which forms the basis of Plaintiff allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents and employees who acted directly or indirectly in the interest of the employer. In so acting these individuals engaged in the pattern and practice of treatment which forms the basis of the Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein

pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under the ADA and the PHRA.

13. Plaintiff filed a timely written Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"), signed March 22, 2024, alleging associational disability discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number of 530-2024-04627 and Plaintiff requested the charge be dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") by request and that Notice is dated July 23, 2025.

16. Plaintiff files the instant Complaint within ninety (90) days of his receipt of the Notice of Right to Sue letter relative to the Charge.

17. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

18. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and more than one year after filing his

charge of discrimination but within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

19. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

20. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

21. In or around 2010, Defendant hired Plaintiff.

22. Plaintiff held multiple positions at Defendant, and the final position he held was District Leader.

23. Plaintiff was well qualified for his position and performed well.

24. In or around November 2021, Plaintiff's wife became pregnant.

25. The pregnancy was deemed high risk.

26. A high-risk pregnancy is considered to be a disability under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

27. The major life activities affected by high-risk pregnancy, include, but are not limited to, reproductive functions.

28. Plaintiff informed Melody Rubin, Executive Director of Human Resources, of this.

29. In or around December 2021, Defendant underwent a department restructuring.

30. Defendant decided to transfer Plaintiff to an understaffed market in Pennsylvania, because of his stellar past performance, with the hopes that Plaintiff would save that market.

31. The new location was two and a half (2.5) hours away from Plaintiff's home and would eventually require Plaintiff to move to a residence closer to the store location.

32. In or around December 2021, Plaintiff began commuting to this new market while he prepared to relocate.

33. Defendant offered Plaintiff a sign on bonus and separate relocation package for this transfer.

34. Specifically, Defendant simply transferred $25,000 to Plaintiff's bank account for the sign on bonus which was for taking on a position in an undesirable market.

35. Plaintiff did not sign any paperwork with regards to the sign on bonus.

36. Plaintiff then contacted Papatya Tankut, Vice President, Retail Workforce Experience, Human Resources, to see if Tankut was able to assist him.

37. Plaintiff initially asked for extra time to relocate because of his wife's high-risk pregnancy.

38. During a regional meeting, Plaintiff was pulled out of the meeting to meet with Eueal Dagne, Division Vice President, with Tankut and other unknown individuals present via Microsoft Teams.

39. In the meeting, they informed Plaintiff that he would have to pay back the money and that it was not a sign-on bonus, but they would work with him to pay the money back.

40. Plaintiff refused, as the bonus was for taking on the position in an undesirable market, not for relocation.

41. Thereafter, Defendant sent Plaintiff a letter stating that he needed to pay the lump sum back.

42. After a few months, Plaintiff informed Dagne and Tankut that he would simply be unable to relocate to this new market due to his wife's high risk pregnancy symptoms.

43. Plaintiff requested to work closer to home.

44. Dagne and Tankut continued to berate Plaintiff about his sign on bonus and relocation.

45. Because Plaintiff could not relocate, Plaintiff applied for another lateral position as a District Leader, in a lower volume market, which would have reduced Plaintiff's pay, but that was closer to his home in New Jersey.

46. Plaintiff interviewed for this role and was told there should be no reason he would not get the

lateral position.

47. In or around the summer of 2022, Plaintiff went out on paternity leave under the Family and Medical Leave Act of 1993, as amended ("FMLA").

48. Plaintiff returned to work at Defendant 12 weeks later from his FMLA leave.

49. In or around the end of October 2022, Plaintiff emailed Karen Lynch, CEO, complaining of Tankut and Dagne's conduct regarding his sign on bonus.

50. Lynch never responded to this email.

51. In or around the end of 2022, Cabrina McLain, Talent Development Business Partner, called Plaintiff and informed him that he would not be hired for the lateral position.

52. A less qualified, less experienced candidate was selected for the role.

53. Plaintiff then emailed Frank Brown, Senior VP Human Resources, about not receiving the lateral position, Tankut and Dagne's conduct and complained that he was being discriminated and/or retaliated against.

54. Brown responded that he would investigate Plaintiff's complaint.

55. Shortly afterwards, Brown called Plaintiff and informed him that he did not find any discrimination and/or retaliation.

56. Plaintiff kept his District Leader role in the market further away from his residence.

57. Importantly, other District Leaders who were non-disabled, did not have family members who were disabled and had not taken FMLA leave were transferred to markets that were closer to home

58. In or around January 2023, Defendant assigned Plaintiff a new boss, Craig Clarke, Regional Director.

59. During Clarke and Plaintiff's first meeting, Clarke questioned Plaintiff about paying back his

sign on bonus.

60. Thereafter, Clarke continued to debate Plaintiff regularly about his sign on bonus.

61. Finally, Plaintiff stated he would be hiring an attorney about the issue, and Clarke immediately stopped questioning Plaintiff about the sign on bonus.

62. In or around September 2023, Clarke abruptly placed Plaintiff on a Performance Management Plan ("PMP").

63. Clarke skipped two (2) steps in Defendant's progressive disciplinary policy in doing this.

64. Clarke did not have the accountability level on the PMP paperwork, which was later inputted into Defendant's system.

65. Importantly, Plaintiff was in the top percent of Defendant for his sales when he was placed on this plan and continued to exceed all expectations.

66. In or around mid-November 2023, Plaintiff called Ethics Line, an anonymous company complaint hotline to complain of Defendant's discriminatory treatment and retaliation ever since Plaintiff informed them of his issues relocating because of his wife's high-risk pregnancy and his FMLA leave.

67. Plaintiff also complained that a Colleague Relations employee and Clarke were in an inappropriate sexual relationship and were targeting Plaintiff together.

68. A week later, the Human Resource Manager called Plaintiff to conduct an initial interview into the complaint.

69. Before the investigation continued, Plaintiff attended a conference call with Clarke and Sarah Hart, Human Resources Business Partner, on or about December 1, 2023.

70. Clarke abruptly terminated Plaintiff's employment.

71. Plaintiff believes and avers that this termination was in further retaliation for his complaint

made just two (2) weeks prior.

72. Importantly, Plaintiff was number one in sales at Defendant at the time of his termination.

73. Defendant discriminated against Plaintiff based upon his association with his wife's disability and retaliated against Plaintiff for engaging in protected activity in violation of the ADA and the PHRA.

74. In addition, Defendant retaliated against Plaintiff for utilizing his rights under the FMLA in violation of the FMLA.

75. Defendant's acts and/or omissions were willful or with reckless disregard to Plaintiff's federal statutory rights.

## COUNT I – ASSOCIATIONAL DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

76. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

77. Plaintiff's wife is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff's wife has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff's wife had a record of such an impairment or because Plaintiff's wife was regarded as and/or perceived by Defendant and its agents as being disabled.

78. Plaintiff was qualified to perform the job.

79. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

80. Circumstances indicated that Plaintiff's wife's disability was the reason for the adverse employment action.

81. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse

employment actions.

82. Plaintiff's wife's disability motivated Defendant's decision to take adverse actions against Plaintiff.

83. The purported reason for Defendant's decision is pretextual.

84. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

85. As a result of Defendant's unlawful associational disability discrimination, Plaintiff has suffered damages as set forth herein.

86. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

87. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

88. Plaintiff's wife is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff's wife has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff's wife had a record of such an impairment or because Plaintiff's wife was regarded as and/or perceived by Defendant and its agents as being disabled.

89. Plaintiff was qualified to perform the job.

90. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

91. Circumstances indicated that Plaintiff's wife's disability was the reason for the adverse employment action.

92. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

93. Plaintiff's wife's disability motivated Defendant's decision to terminate Plaintiff.

94. The purported reason for Defendant's decision is pretextual.

95. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

96. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

97. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

98. Plaintiff engaged in activity protected by the ADA when he complained about associational disability discrimination.

99. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

100. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

101. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

102. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT IV – RETALIATION
### PENNSYLVANIA HUMAN RELATIONS ACT

103. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

104. Plaintiff engaged in protected activity when he complained about associational disability discrimination.

105. Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

106. There exists a causal connection between Plaintiff's request for a reasonable accommodation and his complaint of associational disability discrimination.

107. Defendant terminated Plaintiff's employment as a result of his protected activity.

108. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT V – RETALIATION
### FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED

109. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

110. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

111. At all times material, Defendant knew, or should have known, of Plaintiff's need for

FMLA Leave to care for the birth of his child.

112. Plaintiff gave Defendant sufficient information to allow it to understand that he needed leave for FMLA-qualifying reasons.

113. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke his federally protected rights under the FMLA.

114. As a result of Plaintiff's attempt to invoke his FMLA rights, by requesting and utilizing his FMLA rights, Defendant has retaliated against Plaintiff by terminating his employment.

115. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

116. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

117. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

118. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

119. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums,

as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Jeffrey DiMuccio, requests that the Court grant him the following relief against Defendant:

(a) Damages for past and future monetary losses as a result of Defendant unlawful discrimination;

(b) Compensatory damages;

(c) Punitive damages;

(d) Liquidated damages;

(e) Emotional pain and suffering;

(f) Reasonable attorneys' fees;

(g) Recoverable costs;

(h) Pre and post judgment interest;

(i) An allowance to compensate for negative tax consequences;

(j) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, the PHRA and the FMLA.

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and

documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for her adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW LLC**

Date: October 21, 2025

By:  */s/ David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215)-545-8917
F: (215)-575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

14